Zettie WHITE, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services,[1] Defendant.

No. F92–00182.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 19, 1993.

---

**1.** Donna E. Shalala succeeded Louis W. Sullivan, M.D. as Secretary of Health and Human Services on January 22, 1993. Therefore, pursuant to Fed.R.Civ.P. 25(d)(1), Donna E. Shalala should be substituted for Louis W. Sullivan, M.D., as the defendant in this suit. No additional action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

Wade R. Bosley, Marion, Joseph W. Shull, Fort Wayne, for plaintiff.

Deborah M. Leonard, Fort Wayne, for defendant.

### Order on Motion for Summary Judgment

ALLEN SHARP, Chief Judge.

Zettie M. White ("White") appeals from a final judgment of the Secretary of Health and Human Services ("Secretary") denying her application for Supplemental Security Income ("SSI") pursuant to § 1602 and § 1614(a)(3)(A) of the Social Security Act ("Act"), 42 U.S.C. § 1381a, 1382c(a)(3)(A). Jurisdiction over White's petition for judicial review is conferred upon this court by 42 U.S.C. § 405(g).

### A. Procedural History

White first filed for SSI benefits on September 8, 1989 (R. 103–106). On that same date, she also filed an application for social security disability insurance benefits ("DIB") pursuant to §§ 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423 (R. 90–92). On October 2, 1989, both the SSI and DIB applications were denied (R. 95–96, 109–110). Upon a request for reconsideration, her petitions were again denied (R. 101–102, 113–114). At her request, an administrative law judge ("ALJ") heard her case on March 24, 1990 (R. 41, 115). On June 22, 1990, pursuant to a request made by White, through her attorney, the claim for Title II benefits, DIB, was dismissed (R. 34). The order of dismissal did not apply to her application for SSI (R. 34). On August 27, 1990, the ALJ issued his findings and a determination that White was not eligible for SSI (R. 28–32). On September 13, 1990, White requested review of the ALJ's August 27, 1990 decision (R. 26). The Appeals Council granted the request for review, and on May 7, 1991, vacated the August 27, 1990 hearing decision and remanded the case to the ALJ "for further proceedings, including a new decision" (R. 24–25). Specifically, the Appeals Council found the hearing decision lacking, because it neither

describe[d] the relative weight attributed to a medical assessment in Exhibit 28 from Javaid Iqbal, M.D. nor resolve[d] the discrepancies between this medical assess-

ment and the Administrative Law Judge's conclusion of the claimant's residual functional capacity.

The Appeals Council added that

although the hearing decision indicates the claimant has nonexertional limitations with respect to the use of her right arm for overhead reaching and also environmental restrictions from moving machinery, the vocational rules are used to direct the conclusion on disability. Inasmuch as the Administrative Law Judge's decision finds the claimant to have nonexertional limitations, the vocational rules may only be used as a framework for decisionmaking and moreover, due to the presence of significant nonexertional limitations in this case, testimony from a vocational expert is necessary.

In its order remanding this case, the Appeals Council instructed that the ALJ 1) "offer the claimant the opportunity for another hearing"; 2) "give further consideration to the claimant's residual functional capacity, describing the relative weight assigned to opinions from treating and consulting physicians"; and 3) "obtain testimony from a vocational expert on the extent to which any nonexertional limitations identified diminish the claimant's potential occupational base" (R. 25).

Pursuant to the "Order of Appeals Council Remanding Case to Administrative Law Judge," a supplemental hearing was held before an ALJ on October 30, 1991 (R. 68). In a decision issued November 21, 1991, the ALJ again found White not eligible for SSI under §§ 1602 and 1614(a)(3)(A) of the Act, 42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (R. 10–18). That decision became the final determination of the Secretary on June 24, 1992 when the Appeals Council found no basis upon which to grant review of the ALJ's decision (R. 4–5).

On August 13, 1992, White appealed to this court for review of the Secretary's decision denying her SSI. On September 10, 1992, the Honorable William C. Lee granted White's application to proceed *in forma pauperis*. This case was last assigned to the Honorable Roger B. Cosbey. For purposes

of judicial economy and justice, it was reassigned to the undersigned Judge on March 23, 1993.

### B. Standard of Review

█ The Act itself provides the pertinent standard of review: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g). The ALJ's finding that White is not disabled must be upheld if it is supported by substantial evidence. *Pitts v. Sullivan*, 923 F.2d 561, 564 (7th Cir.1991); *Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir.1990). This court will not reweigh the evidence presented at the administrative hearing, *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 388 (7th Cir. 1992), nor will it determine whether White actually was disabled. *Id.; Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989). Absent an error of law by the Secretary, this court must affirm her decision if there is substantial evidence to support it. *Herr*, 912 F.2d at 180; *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir.1989). Substantial evidence is that quantum of relevant evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Howell v. Sullivan*, 950 F.2d 343, 347 (7th Cir.1991). It may be less than a preponderance of the evidence. *See, Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Young*, 957 F.2d at 389.

### C. Description of the ALJ's Findings

Ms. White must be "disabled" in order to qualify for the benefits she requests. The Act defines "disabled" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Pursuant to statutory authority, 42 U.S.C. §§ 423(d)(4), 1382c(a)(3)(D), the Secretary has promulgated regulations for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f). The Secretary employs a five-step process to determine whether a claimant is eligible for benefits within the meaning of the Act. *Campbell v. Shalala*, 988 F.2d 741 (7th Cir.1993). The Seventh Circuit has described this sequential inquiry.

The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). Once the claimant has satisfied Steps One and Two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984).

*Campbell*, 988 F.2d at 743; *see also Young*, 957 F.2d at 389.

Applying the five-step procedure in this case, the ALJ decided the case at step five by determining that:

1. The claimant has not engaged in substantial gainful activity since September 8, 1989.

2. The medical evidence establishes that the claimant has severe limited use of her right arm, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's testimony regarding her pain and functional limitations was found to be grossly exaggerated and not credible.

4. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work requiring lifting more than 10 pounds. In addition, the claimant cannot perform overhead

reaching or lifting, cannot use her right arm repetitively, and cannot push or pull with her right arm (20 CFR 416.945).

5. The claimant is unable to perform her past relevant work as a dietary aid, a pastry helper, or a packer.

6. The claimant's residual functional capacity for the full range of light work is reduced by her inability to lift more than 10 pounds and the above described nonexertional limitations.

7. The claimant is 37 years old, which is defined as a younger person (20 CFR 416.963).

8. The claimant has a high school education (20 CFR 416.964).

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR 416.-968).

10. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11. Although the claimant's exertional and nonexertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are: general clerk, counter clerk, photo finisher, receptionist, surveillance system monitor, and escort vehicle driver, all of which exist in significant numbers in the national economy.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

In so finding, the Secretary (through his designate, the ALJ) renders White ineligible to receive SSI under §§ 1602 and 1614(a)(3)(A) of the Act.

### D. Issues Presented on Review

The plaintiff asks that this court reverse the Secretary's decision and grant benefits or in the alternative remand this case to the Secretary because 1) the ALJ improperly considered White's subjective complaints of pain; and 2) the ALJ failed to follow Social Security Ruling 83–12's mandate that limitations within the range of work stemming from White's restricted use of her right arm be considered.

### E. Discussion

Zettie M. White was born July 15, 1954 (R. 90). She was educated through the ninth grade and later earned her GED in either 1981 or 1983 (R. 50). From 1973–1979, White packed bottles in boxes for the Foster Forbes Glass Company (R. 172). She left that job because of the pain and problems she allegedly continued to suffer as a result of her surgery in January, 1977, which severed a component of a right brachial plexus [2] nerve in her right arm (R. 138). She states that she continued, through the date of the ALJ hearing, to have complications and pain from that surgery thus qualifying her for benefits. In the more recent past, she has worked for short periods as (1) a pastry maker at Cinnamon Sam's (November, 1987—January, 1988) (R. 119); (2) a dietary aid at Flinn Memorial Hospital (June 26, 1989—August 21, 1989) (R. 119); and (3) a summer job as a sorter in a tomato factory (R. 66–67). White explains that she left her pastry maker and dietary aid positions, because they caused too much pain in her right arm (R. 120, 168, and 172). At the tomato factory, she was capable of performing her job, because she was able to sort and discard the rotted and bad tomatoes with her left hand (R. 66–67). However, she testified that she could no longer do this type of work as it would result in her left arm swelling (R. 66–67).

The plaintiff argues that the ALJ improperly considered Ms. White's subjective complaints of pain. In particular, the ALJ erred, because he rejected Ms. White's testimony regarding the degree, intensity and

---

**2.** The brachial plexus is a "network of lower cervical and upper dorsal spinal nerves supplying the arm, forearm, and hand. *Taber's Cyclopedic Medical Dictionary* 223 (15th ed. 1985).

persistence of her pain and its effect on her ability to work *solely*, because her complaints were not supported by objective findings. If true, as the plaintiff contends, the ALJ's procedures would conflict with 20 C.F.R. § 404.1529(c)(2).

> we will not reject your statements about the intensity or persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

20 C.F.R. § 404.1529(c)(2). However, in this circuit, even though the "available objective medical evidence" need not be of a nature to wholly substantiate the subjective complaint of pain, there should be some objective medical evidence present to establish the existence of an impairment. *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir.1992) (quoting *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989)). This is in keeping with prior language found in § 404.1529

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. 20 C.F.R. § 404.1529(a).

With all of this in mind, the Seventh Circuit established a test for a plaintiff to establish disability under the Act. Ms. White may show that she is disabled using subjective complaints of pain if she shows:

> 1) evidence of an objectively adduced abnormality *and, either* 2) objective medical

evidence supporting the subjective complaints issuing from that abnormality, *or* 3) that the abnormality is of a nature in which it is reasonable to conclude that the subjective complaints are a result of that condition. *Veal v. Bowen*, 833 F.2d 693, 698 (7th Cir.1987).

*Ms. White's Testimony*

White testified that she has pain from the back of her neck to her fingers in her right arm, and she has problems with her left arm from using it so much to compensate for the limited abilities of the right arm (R. 55). She testified that she could walk no more than three to four blocks without incurring pain and swelling (R. 57). White stated that she takes "Tylenol or something" for the pain (R. 57). Based upon her testimony, she drives occasionally but spends most of her time resting on the couch; she instructs her children to guide them through household chores (R. 59–61).

*The Medical Evidence*

The medical evidence presented extends back to 1977 when Ms. White underwent surgery for pain and numbness in her right arm. At the time of her discharge, January 17, 1977, she was diagnosed as suffering from "right anterior scalene syndrome" and a "surgical transection of anomalous component of the right brachial plexus with Erb's palsy." [3] The prognosis at discharge indicated that her original symptoms were gone, no recurrence of anterior scalene syndrome was likely, and the prognosis for regeneration of the divided portions of the brachial plexus was fair (R. 138).

A medical assessment completed by Dr. Iqbal on June 5, 1990 indicated that the claimant could lift from five to seven pounds. Dr. Iqbal determined that White could stand or walk for one to two hours without interruption for a total of six to seven hours each day. He concluded that White had the ca-

---

3. Erb's Palsy—A paralysis of the deltoid, biceps, long supinator, and brachialis anticus muscles due to a lesion of the brachial plexus of the fifth and sixth cervical nerves. *Taber's Cyclopedic Medical Dictionary* 1212 (15th ed. 1985).

scalene syndrome—A symptom complex characterized by brachial neuritis with or without vascular or vasomotor disturbance in the upper extremities. The symptoms are not clearly defined but pain, tingling, and numbness may occur anywhere from shoulder to fingers. Atrophy of small muscles of the hand or even the deltoid or other muscles of arm. *Taber's Cyclopedic Medical Dictionary* 1522 (15th ed. 1985).

pacity to sit for one hour without interruption for a total of six to seven hours in an eight-hour workday. Dr. Iqbal reported that White could never crawl and could only occasionally stoop, crouch and kneel. White was assessed as having a limited ability to reach, handle, feel, push and pull. Furthermore, the plaintiff had environmental restrictions in terms of working around moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration (R. 176–177).

Dr. Iqbal did a thorough consultative examination of White on August 15, 1991. At that time, he concluded:

> Her statements about inability to perform certain things and jobs with her right hand are because of the onset of the pain which interferes with these activities. I have no way of determining whether it is true or not because pain is a subjective complaint, but I cannot explain the degree of pain and limitations regarding doing these activities by purely her neurologic findings. It might be helpful for her to be referred to a pain clinic and maybe with physical therapy and medications, her right arm pain might improve, but I cannot be sure about that. She definitely has limitations of her right arm use because she has restricted right shoulder joint movement and has weakness of the muscles of the right arm supplied by the C–5/C–6 nerve root, especially her right arm external rotator muscles and shoulder abductors.

(R. 185–186).

■ In light of the medical evidence, the ALJ found Ms. White's testimony about her pain not credible. As to her left arm, despite her complaints, there is no medical evidence in the record to indicate a problem with that hand. As to her right arm, the ALJ found White's complaints of pain exaggerated. This court cannot find the decision as to the plaintiff's credibility to be "patently wrong." See, *Imani v. Heckler*, 797 F.2d 508 (7th Cir.1986). Therefore, it will not be disturbed and is taken as true.

Given that the ALJ's credibility determination as to the subjective complaints of pain are considered to be true by this court, the next question is whether the ALJ properly considered the limitations of White's right arm when assessing the number of jobs that she could perform. Here, too, the court must affirm the ALJ's determinations.

*The Vocational Expert's ("VE") Testimony*

■ The ALJ asked the VE to estimate the number of jobs available to Ms. White based upon the premise that she was

> capable of working at the light exertional level but would not be able to engage in any work which required lifting more than 10 pounds, which required overhead reaching or lifting, or required repetitive use of the right arm. With those restrictions, could that individual perform any of Miss White's past employment?

(R. 86). Based upon this information from the ALJ, the VE responded that Ms. White would not be able to perform any of her past employment. However, she would be able to work as a general clerk for which the VE estimated approximately 4,000 positions existed in the area; or as a "counter clerk, approximately 175 positions," or "a storage rental facility clerk, approximately 200 positions" (R. 86).

The ALJ then asked whether there were any jobs for an individual given "[t]he same restrictions but at the sedentary exertional level" (R. 86). To that question the VE responded,

> [s]he could be a receptionist, approximately 600 positions. She could be a surveillance systems monitor, approximately 100 positions. And she could be an escort vehicle driver, Your Honor, approximately 125 positions.

(R. 86).

The number of jobs available, as testified to by the VE, are clearly significant given the recent Seventh Circuit decision, *Lee v. Sullivan*, 988 F.2d 789 (7th Cir.1993). Finding that 1,400 job positions constituted a significant number of jobs, Senior Judge Wood wrote:

> In *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988), the Sixth Circuit found 1,350 positions were a significant number of jobs. In *Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir.1989), the Ninth Circuit found 1,266

positions were within the parameters of a significant number of jobs. The Tenth Circuit, while refusing to draw any bright line, found 850–1,000 potential jobs were a significant number of jobs in *Trimiar v. Sullivan,* 966 F.2d 1326, 1330–32 (10th Cir. 1992). *See also Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988) (500 jobs are significant number); *Allen v. Bowen,* 816 F.2d 600, 602 (11th Cir.1987) (174 positions are significant number); *Nix v. Sullivan,* 744 F.Supp. 855, 863 (N.D.Ill.1990) (675 jobs are significant number), *aff'd,* 936 F.2d 575 (7th Cir.1991).

*Id.,* at 794. Clearly, if the numbers presented in *Lee* satisfy the definition of "significant number," the estimated number of available positions for someone with Ms. White's limitations meets the test of constituting a substantial number. Furthermore, the ALJ's rationale and conclusions are in no way inconsistent with Social Security Ruling 83–12 as White contends.

### F.   Conclusion

Having thoroughly reviewed the record in this case, the court concludes that there was substantial evidence upon which the Secretary could determine that Ms. White was not disabled. For the reasons described herein, Ms. White's motion for summary judgment is **DENIED,** and the Secretary's final decision is **AFFIRMED.**