**Gary LEFFORD, Plaintiff,**

v.

**H. Carl McCALL, Comptroller of the State of New York, The New York State Local Retirement Systems—Police and Fire Retirement System, Frederick J. Anderson, Ombudsman of the City of Jamestown, New York, Richard Kimball, Mayor of the City of Jamestown, New York, The City Council of the City of Jamestown, New York, and The City of Jamestown, New York, Defendants.**

No. 94–CV–0748.

United States District Court, N.D. New York.

Feb. 2, 1996.

---

Gary Lefford, pro se.

David B. Roberts, Atty. Gen., Albany, NY, for defendants.

### MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

**Plaintiff Gary Lefford** commenced this action by filing a complaint on June 9, 1994, wherein he alleged that defendants revoked his disability pension without due process in violation of the 14th Amendment. Defendants countered, *inter alia,* that plaintiff improperly obtained approval for the pension because he is not actually disabled. The Court subsequently addressed cross-motions for summary judgment by all parties and rendered a decision from the bench that was memorialized in an Order dated February 5, 1995. In that Order, the Court granted partial summary judgment in favor of plaintiff and against **defendants H. Carl McCall and the New York State Local Retirement Systems ("State Defendants");** denied the motion by State Defendants against plaintiff; and granted summary judgment in favor of **defendants Frederick Anderson, Richard Kimball, the City Council of the City of Jamestown, and the City of Jamestown ("Jamestown Defendants").**

Based on its findings, the Court ordered State Defendants to "hold a hearing at which the said defendants shall bear the burden of demonstrating that plaintiff Gary Lefford improperly obtained approval for a performance of duty disability retirement allowance." Finally, the Court directed that the hearing be held within thirty days of service on State Defendants of the Order and that a decision be rendered within thirty days of the conclusion of the hearing. A hearing was in fact held by State Defendants on February 17, 1995, but because of several adjournments it was not completed until May 26, 1995. A Decision finally was rendered on June 21, 1995, in which the Hearing Officer determined that plaintiff "is not permanently incapacitated for the performance of his duties ... and the prior approval of a ... benefit was improperly obtained by him." Plaintiff now moves to have the hearing of February 17–May 26, 1995, declared null and void and to have his disability pension benefits reinstated.

## II. DISCUSSION

### A. POWER OF REVIEW

■ As an initial matter, the Court is disturbed to find itself reviewing a state administrative decision such as the one at issue, would not ordinarily do so, and is reluctant to do so here. However, it is well-settled that federal courts "have the power, and the duty, to make their intervention effective." *Smith v. Sullivan,* 611 F.2d 1039, 1044 (5th Cir. 1980). As a result, once a constitutional violation has been proved a court may, if necessary, exert its equitable power to prevent repetition of the violation. *Ruiz v. Estelle,* 679 F.2d 1115, 1156 (5th Cir.1982). In

this case, plaintiff already has established in this Court that defendants have committed a constitutional violation against him, in the form of a denial of his due process. The Court consequently has both the power and the duty to examine plaintiff's motion and State Defendants' procedures to ensure that no further violation of plaintiff's rights has occurred.

### B. DUE PROCESS ANALYSIS

■ In general, the Court's prior Order directed State Defendants to provide plaintiff with due process before they revoked his benefits. Thus the issue on this motion is whether the hearing granted to plaintiff actually represents "due process." Admittedly, the Court's Order failed to specify exactly what procedures were required of defendants because it merely stated that they provide a hearing at which they would bear the burden of proof.[1] Defendants are not laymen, however, and certainly were aware that this incomplete guidance did not free them to implement any procedure as long as it arguably could be categorized as a "hearing." They still were required, as they always are, to ensure that the process afforded plaintiff adequately protected his rights in two ways— first, through a proper hearing, and second, through sufficient evidence adduced at that hearing.[2]

#### 1. Hearing Procedures

■ The Court addressed the first issue to a certain extent in its bench decision preceding the Order of February 5, 1995, but will do so again here. The Supreme Court consistently has held that, absent the necessity of quick action by the state, "some kind of hearing" is required before an individual is

---

1. Contrary to plaintiff's assertions, the Court, by directing defendants "to provide plaintiff a hearing under [N.Y.Retire. & Soc.Sec.Law] Section 411," did not intend to dictate any specific statutory procedures for defendants to follow—Section 411 contains no such procedures. Rather, the Court was emphasizing the *nature* of the required hearing, in that it would be held simply to determine whether plaintiff had somehow committed fraud (the subject matter of Section 411) related to the pension in which his due process rights had vested—and of which the state had unconstitutionally divested him. *See* N.Y.Retire. & Soc.Sec.Law § 411.

2. In addition to the requirement of a hearing, the Supreme Court has recognized, in a variety of contexts, that a governmental decision resulting in the loss of an important life, liberty, or property interest violates due process if the decision is not supported by a certain quantum of evidence. *See, e.g., Douglas v. Buder,* 412 U.S. 430, 432, 93 S.Ct. 2199, 2200–01, 37 L.Ed.2d 52 (1973) (revocation of probation); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) (denial of admission to the bar).

finally deprived of a property interest. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Moreover, the "fundamental fairness" requirement of due process represents the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Despite these admonitions, due process "remains a flexible concept ... and calls only for such procedural protection as the particular situation demands." *Moore v. Warwick Pub. Sch. Dist. No. 29,* 794 F.2d 322, 327 (8th Cir.1986).

∎ Resolution of the issues of what process is due and whether a particular procedure is constitutionally sufficient requires analysis of the governmental and private interests that are affected. As the Supreme Court stated in *Mathews,*

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.,* 424 U.S. at 335, 96 S.Ct. at 903. This three-factor balancing test has long been the standard under which procedural due process claims have been scrutinized. *Moore,* 794 F.2d at 327.

∎ The ultimate result of applying the *Mathews* test has been, in most cases, "the requirement of some kind of pre-deprivation hearing." *Moore,* 794 F.2d at 327. Such was the result achieved when the Court applied the test to this case before. But the typical hearing, though necessary, need not be elaborate. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Nor must it conform to

any ostensibly applicable state procedural regulations, because courts have taken pains to distinguish between the mandates of state regulations and the requirements of federal due process. *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action. *Mathews,* 424 U.S. at 343, 96 S.Ct. at 906–07. The state typically has served the central concerns of due process by holding a hearing at a time and place reasonably convenient to the affected party and allowing that party to present his version of the facts and his response to the state's case. *See id.*

∎ Here, at least as far as the hearing procedures are concerned, the Court finds that State Defendants have satisfied the minimum requirements for due process, although defendants have not made the decision an easy one. Plaintiff was provided notice of the charges, some opportunity to prepare for and meet them, and a hearing at which he was permitted to present his side of the story, including witnesses on his behalf. Such process ordinarily is sufficient because it has the capacity "[to prevent] unjustified or mistaken deprivations and [promote] participation and dialogue by affected individuals in the decisionmaking process." *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980).

∎ However, defendants' foot-dragging, disorganization, and apparent total lack of concern for the rights of plaintiff has been a constant problem over the last two years. Such behavior has the capacity to raise due process implications on its own when a protected property interest is involved. *See, e.g., Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496; *Isaacs v. Bowen,* 865 F.2d 468, 477 (2d Cir.1989). The Court is left with the impression that although they have performed the least that is required of them, defendants have done little "[to promote] participation and dialogue by affected individuals." [3] *Mar-*

---

3. For example, at the time the Court issued its Order directing State Defendants to provide plaintiff a hearing, both the Court and defendants were aware that plaintiff's financial position was precarious and that he was concerned about losing his attorney. This fact was among

*shall,* 446 U.S. at 242, 100 S.Ct. at 1613. Hopefully, defendants' activities in this case represent something other than standard operating procedure.

### 2. Sufficiency of the Evidence

The remaining issue is whether findings of a state hearing officer that result in the loss of a constitutionally protected property interest must be supported by a certain amount of evidence in order to satisfy due process. Courts have implemented such a requirement in many other situations where important interests are at stake, so clearly some quantum of evidence is mandatory. Because this case appears to be one of first impression, however, the Court still must determine which quantum is correct. A brief review of the standards that apply to other scenarios is instructive.

For example, in the context of good time credits for prisoners, which are constitutionally protected, revocation of such credits "does not comport with 'the minimum requirements of procedural due process,' ... unless the findings of the prison disciplinary board are supported by *some evidence* in the record." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974)) (emphasis added). "Some evidence" essentially is equivalent to a modicum of evidence, slightly more than no evidence at all. In other words, a due process examination of the evidence supporting a disciplinary committee's decision "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by

the disciplinary board." *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774.

■■ In the context of Social Security disability benefits, a topic much more on point, the Social Security Act provides for an even stricter standard of review, presumably based on due process concerns: "The findings of the Secretary as to any fact, if supported by *substantial evidence,* shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). Substantial evidence is that quantum of evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and is generally viewed as equal to or less than a preponderance of the evidence. *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966). When applying the substantial evidence test to a finding that an applicant was not disabled, the court "will not reweigh the evidence presented at the administrative hearing, ... nor will it determine whether [the applicant] actually was disabled. [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it." *White v. Shalala,* 823 F.Supp. 621, 623 (N.D.Ind.1993).

■■ Here the Court arguably should go even one step further and reverse the hearing officer's decision if it is not supported by *a preponderance of the evidence,* because State Defendants were directed to hold at hearing at which they would bear the burden of proof. However, after considering the goals of the *Mathews* balancing test, as well as the similarities between the Social Security context and the present case, the Court holds that the revocation of plaintiff's

the Court's considerations in directing defendants to hold the hearing within 30 days and make a decision within 30 days thereafter. Despite the clear mandate of the Order, however, the hearing was adjourned three or four times such that (1) it was not concluded for nearly four months; (2) a decision was not rendered for nearly five months; and (3) the inevitable occurred—plaintiff lost his attorney and was left in the dire position in which he started.

State defendants counter that plaintiff's attorney requested at least one of the adjournments. Assuming, *arguendo,* that defendants are correct, their argument does little to establish that they acted in good faith. Defendants themselves were responsible for the other adjournments. Even more importantly, defendants appear to have at least violated the spirit of the Court's Order. They were entrusted with the duty to ensure that plaintiff was granted a timely resolution of his case, and it did not occur.

disability pension does not comport with the requirements of due process unless the findings of the hearing officer are supported by substantial evidence.[4] *See Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. *Cf. Hill,* 472 U.S. at 454–55, 105 S.Ct. at 2773–74 (Supreme Court performing similar balancing to determine that "some evidence" is all that is needed in prison disciplinary case).

As the Court stated in its previous decision, initial determinations of disability entitlement may be undertaken with lesser care. Here, however, State Defendants had already made a determination based on plaintiff's unbiased standard medical reports and their own independent investigation that plaintiff was entitled to a disability pension. Applying *Mathews,* because State Defendants sought (1) to prove that plaintiff committed fraud and (2) to take his benefits away, the private interest that is affected by the official action in this case is an extremely important one and the risk of erroneous deprivation of such interest seems too high under anything less than a "substantial evidence" review. In regard to the other part of the test, the Government's interest does not alter the Court's conclusion because the *additional* fiscal and administrative burdens entailed by a requirement of substantial evidence appear to be insignificant.

After reviewing the record in this case, the Court concludes that the evidence before the hearing officer was not sufficient to meet the requirements imposed by the Due Process clause of the Constitution. Once again, the issue to be determined at the hearing was whether plaintiff fraudulently induced State Defendants into giving him a disability pension, not whether plaintiff was disabled in the first place. Despite this fact, the hearing officer considered a significant amount of evidence that simply was not relevant to the question at hand. The officer's Determination contains an entire section devoted to "Evidence (Medical)" that essentially was identical to the evidence relied on to support the state's initial determination that plaintiff

*was* disabled. In reality, the hearing officer treated the hearing as if plaintiff was seeking benefits for the first time, even though the Court went to great lengths in its prior Order to remind State Defendants otherwise.

For purposes of this motion, the Court has considered only the evidence that might be relevant to a determination of whether plaintiff defrauded the state. This evidence includes, exclusively, (1) the videotapes; (2) the testimony of Mr. Cotten and Mr. McKotch; (3) the testimony of plaintiff, Mrs. Lindner, Mr. Bach, Jay Lefford, Mrs. Heelas, and Mrs. Armstrong; and (4) the testimony of Dr. Cohen after he witnessed the videotape. Considering all this information together, the Court finds that plaintiff's disability pension has been revoked on a quantum of evidence clearly below the "substantial evidence" standard. In fact, the Court believes that some question exists in regard to whether State Defendants had "some evidence" for their decision.

The strongest evidence supporting the revocation of plaintiff's benefits consisted of a videotape of a man working on a roof who was said to be plaintiff, but even the hearing officer admitted that "I am unable to identify the face of the man on the roof." (Determination at 10.) The only witnesses that supported the contention that the man was plaintiff were the State Defendants' private investigator, Mr. Cotten, and Mr. McKotch, Jay Lefford's neighbor who "was clearly a hostile witness," "did not get along" with the Leffords, and "had nothing to do with them." (*Id.* at 4.) Plaintiff countered with the testimony of two witnesses, Mrs. Lindner and Mr. Bach, both of whom testified that plaintiff was far away at Ashland University, Ohio, on the day that Mr. Cotten and Mr. McKotch claimed he was on a roof in Falconer, New York. The hearing officer categorized both of these witnesses as "uninterested," yet essentially ignored their testimony, stating that "I can conclude only that someone has got the dates wrong."

---

4. The Court reemphasizes that its power to review the revocation hearing in this case is derived solely from the fact that defendants have *already* violated plaintiff's due process rights at least once, and the Court has directed them not to do it again. *See Ruiz,* 679 F.2d at 1156. Therefore, the Court neither intends to, nor believes that it will, open the door to federal court review of disability benefits cases lacking these specific characteristics.

As if Mrs. Lindner and Mr. Bach were not enough to counter the videotape, plaintiff testified that the house depicted was not his son's house as Mr. Cotten and Mr. McKotch claimed. According to the hearing officer, plaintiff "pointed out differences in the decorative groove of a window, the location of tree branches near the roof, and a white marking on a tree as shown on the tape." (*Id.* at 5.) This seemingly important evidence apparently also may have been ignored; the hearing officer failed to mention it in his discussion of the evidence presented. Jay Lefford, plaintiff's son, also took the stand and testified that (1) the house was not his and (2) although he had done some roofing work on his own house his father had not helped him. Finally, Mrs. Heelas and Mrs. Armstrong both testified that Jay Lefford had borrowed ladders from them to fix his roof, but that they had not seen any of the work itself.

Dr. Cohen, the only other possibly relevant witness, was shown the videotape and asked his impressions. After admitting that he was unable to identify plaintiff as the person depicted, the doctor stated that "if that person was, in fact, [plaintiff], he would change his opinion about [plaintiff's] disability, and strongly feel that he was capable of working as a firefighter." (*Id.* at 9.) The Court admits that if it were established with any certainty that plaintiff was the person depicted in the videotape, such testimony might carry some weight. But based on the conflicting evidence on the identity issue, the Court believes Dr. Cohen's opinion was only marginally relevant, if at all. The hearing officer obviously concluded otherwise, explaining—to the Court's amazement—that "I was particularly impressed by Dr. Cohen's testimony, and I can only speculate on the effect . . . a viewing of the tapes by the other doctors would have on their opinions." (*Id.* at 11.)

The Court has not examined the entire record, independently assessed the credibility of witnesses, or reweighed the evidence in this case. It also has not determined whether plaintiff fraudulently induced the state into providing him with benefits. The only question that has been addressed in this part of the analysis is whether there is substantial evidence in the record that could support the conclusion reached by the hearing officer. From the Court's perspective, there is not.

## C. JAMESTOWN DEFENDANTS

Plaintiff's claims against Jamestown Defendants were dismissed in the Court's February 5, 1995, Order. Thus to the Court's knowledge, plaintiff has no further federal claims against them. This fact is important because Jamestown Defendants have indicated a willingness to withdraw any remaining counterclaims against plaintiff—assuming plaintiff had no more quarrel with them. The Court consequently resolves all issues before it in regard to the Jamestown Defendants by dismissing their counterclaims against plaintiff. In the Court's view, any further disputes plaintiff has with Jamestown Defendants do not flow from due process violations, so plaintiff should pursue possible remedies against them in state court.

## III. CONCLUSION

This case is unique—the Court's equitable powers of review apply because State Defendants already have violated plaintiff's due process rights at least once, and the Court has directed them not to do so again. Although plaintiff was granted a hearing, State Defendants' decision to revoke plaintiff's benefits was not based on substantial evidence. Plaintiff consequently was not afforded due process before being deprived of a constitutionally protected property interest, and the deprivation must be reversed. State Defendants are directed to reinstate the determination dated January 6, 1994, granting plaintiff a performance of duty disability retirement allowance, until such time as they establish that he has committed fraud via a hearing at which at least substantial evidence is presented in their favor. They are also directed to pay plaintiff his performance of duty disability retirement allowance retroactively to February 10, 1994, with a set off for amounts received by him because of his service retirement allowance.

**IT IS SO ORDERED.**