**Maurice SIBLEY, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 94 C 1257.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 6, 1994.

Stephen H. Loeb, Chicago, IL, for plaintiff.

Daniel Edward May, U.S. Attorney's Office, Chicago, IL, for defendant.

---

1. Plaintiff's application also sought Supplemental Security Income, but his complaint and mem-

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Plaintiff Maurice Sibley brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health and Human Services ("Secretary") denying his application for Disability Insurance Benefits ("DIB") under Social Security Act ("Act"). 42 U.S.C. §§ 416(i); 423(d).

## I. BACKGROUND

Plaintiff filed his application for DIB on March 11, 1991, alleging that he was disabled due to a heart attack since February 17, 1991. (Administrative Record ("R.") at 71–74). His application was denied at the initial levels of administrative review (R. 78–81, 87–89), and he requested an administrative hearing. On February 19, 1992, Administrative Law Judge Edward R. Gustafson ("ALJ") conducted a hearing at which plaintiff, represented by counsel, and Dr. David I. Abramson, a medical expert, appeared and testified. (R. 27–70). After considering all the evidence presented, the ALJ found that plaintiff was not disabled and, therefore, was not entitled to DIB under the Act. (R. 14–22).[1] This became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review of the decision on January 26, 1994. (R. 4–6).

### A. Evidence of Record

Plaintiff was born on July 5, 1939, making him fifty-three years old at the time of the ALJ's decision. (R. 32). At his hearing, plaintiff testified that he completed ten grades of school. (R. 31, 34). Elsewhere in the record, in a disability report plaintiff signed, plaintiff indicated he finished twelve grades. (R. 112–113). According to plaintiff's counsel, this information was taken over the phone and was in error. (R. 31). In any event, the ALJ determined that plaintiff had a high-school education. (R. 21). Plaintiff worked in a factory from 1961 to 1973, then was a tool and die worker until April of 1990,

oranda do not request review of this claim.

when he was laid off from his job. (R. 21, 35, 112).

In February of 1991, plaintiff suffered three days' of chest pain and was hospitalized. (R. 149–50). An electrocardiogram ("ECG") suggested that plaintiff had an acute inferior wall myocardial[2] infarction.[3] (R. 150). Plaintiff underwent an angiogram which revealed severe blockages in his right coronary artery: a 90% stenosis[4] in the midportion of the artery and an 80% stenosis one centimeter away. (R. 152). Chest x-rays indicated plaintiff's heart was enlarged. (R. 158). Angioplasty reduced the right coronary artery blockages to 20 and 30 percent. (R. 172).

Plaintiff's treating physician, Dr. Zunamon, provided a report based on his examination of plaintiff on April 8, 1991. (R. 167–168). At that time, Dr. Zunamon indicated that plaintiff was not suffering chest pain, but was experiencing syncope.[5] (R. 167–168). In addition, Dr. Zunamon reported that plaintiff was dyspneic[6] after walking four blocks. (R. 168). An ECG exercise stress test was inconclusive. (R. 175).

Plaintiff underwent a consultative psychiatric evaluation at the request of the Social Security Agency on May 20, 1991. (R. 186–188). The examining psychiatrist, Dr. Robert Beebe, noted plaintiff's history of congestive heart disease and the fact that plaintiff was taking Prozac. (R. 186). Plaintiff indicated he felt nervous, sometimes depressed, and generally run down. (R. 186). Following his evaluation, Dr. Beebe concluded that plaintiff was experiencing an adjustment disorder with a depressed mood. (R. 187).

Dr. Zunamon, completed a psychiatric evaluation of plaintiff based on an examination on June 28, 1991. He noted that plaintiff was depressed and frustrated, and was being treated with Prozac. (R. 216–217).

Plaintiff's psychological condition, however, did not limit his ability to perform work. (R. 217). Regarding plaintiff's physical condition, Dr. Zunamon reported that plaintiff's ability to work was "limited." (R. 219).

On January 17, 1992, Dr. Vollala, another treating physician, completed an evaluation of plaintiff's capacity for work. Due to plaintiff's history of chest pain and infarction, Dr. Vollala felt he was limited to lifting or carrying 15–20 pounds occasionally, and 15 pounds frequently. (R. 237). Although he indicated plaintiff experienced fatigue, Dr. Vollala felt his ability to walk or stand was not affected. (R. 239). In addition, Dr. Vollala indicated that plaintiff's ability to sit was not affected. (R. 239). Dr. Vollala also stated that plaintiff's dizziness limited his capacity to perform activities such as climbing, balancing, and working around heights. (R. 238–239). Plaintiff's chest pains adversely affected his ability to push and pull. (R. 238). Based on plaintiff's subjective complaints of shortness of breath, Dr. Vollala also suggested that plaintiff would be unable to work around dust, fumes, and humidity. (R. 239).

At the administrative hearing, plaintiff testified as to the various prescriptive medications he takes for his chest pains, blood pressure, breathing problems, and a thyroid condition. (R. 39–41). He stated that he suffers chest pains about three times a week. (R. 40–41). Plaintiff stated that his girlfriend does the chores around the house, although he also stated he cooks breakfast and does laundry. (R. 41, 45). He also walks to the grocery store that is a block away, and can carry one bag of groceries. (R. 41). Plaintiff estimated that he could lift ten pounds, although he testified his doctor told him not to lift anything. (R. 42). He also stated he could stand for just five minutes before his legs would get weak. (R. 43). Sometimes, plaintiff experiences chest pain

---

**2.** Myocardial pertains to the muscular tissue of the heart. *Dorland's Medical Dictionary,* at 1089 (27th Ed.1988).

**3.** Infarction is an interruption of blood supply to an affected area resulting in a gross necrosis or cell death. *Dorland's,* at 833–34, 1101.

**4.** Stenosis is narrowing or stricture of an orifice or canal. *Dorland's,* at 1579.

**5.** Syncope is a temporary suspension of consciousness due to ischaemia, a deficiency of blood supply. *Dorland's,* at 867, 1628.

**6.** Dyspnea is difficult or labored breathing. *Dorland's,* at 520.

climbing the stairs to his third floor apartment and must stop to rest. (R. 50–51). Plaintiff claimed that his doctor also told him he had emphysema. (R. 58).

After listening to plaintiff's testimony and reviewing the medical evidence, Dr. Abramson testified as a medical expert. Dr. Abramson indicated that plaintiff's hypothyroidism was under control and that he had a successful angioplasty to reduce his stenosis. (R. 60). The doctor opined that because plaintiff experienced chest pain without exertion and because exertion did not always precipitate chest pain, plaintiff's chest pain was not of cardiac origin. (R. 61–62). Dr. Abramson noted that plaintiff often complained of shortness of breath, perhaps due to emphysema, but also noted that there was no medical evidence to support this. (R. 61–62). While he was of the opinion that plaintiff could certainly perform sedentary work,[7] Dr. Abramson was hesitant to speculate as to whether plaintiff could perform light work[8] without evidence regarding plaintiff's emphysema. (R. 63). Accordingly, the ALJ ordered a pulmonary function study. (R. 63). Dr. Abramson stated that if such a test showed satisfactory results, plaintiff would be able to perform light work. (R. 67). At the close of the hearing, the ALJ indicated that the question was whether plaintiff could perform light or sedentary work, and assured Dr. Abramson that the additional necessary evidence would be provided.

On April 8, 1992, plaintiff underwent a pulmonary function test (R. 241). The ALJ then submitted the results to Dr. Abramson for analysis. (R. 250A). Dr. Abramson noted that the test showed satisfactory effort and cooperation on plaintiff's part. (R. 249). The doctor then reiterated the test results:

> Following the administration of bronchiolator, the forced expiratory volume in the first second (FEV1) rose from 2.64 liters (85%) to 2.74 liters (88%). The maximum voluntary ventilation (MVV) rose from 53 liters/minute (57%) to 77 liters/minute (83%).

(R. 250). Dr. Abramson then compared these figures to those Listing 3.02[9] required to find a plaintiff disabled as a result of chronic pulmonary insufficiency—an FEV1 of 1.5 liters and an MVV of 60 liters per minute. (R. 250, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02). Dr. Abramson noted that plaintiff's result—an FEV1 of 2.74 and an MVV of 77—were "much higher than those of the listing." (R. 250). Accordingly, he concluded that plaintiff did not have a pulmonary impairment that met a listing. (R. 250). He made no mention of whether the pulmonary test offered evidence as to plaintiff's capacity for light work. (R. 249–250).

Upon receipt of Dr. Abramson's analysis, the ALJ resubmitted plaintiff's file to the doctor, reminding him that the issue left open at the close of the hearing was how plaintiff's breathing impairment, if any, affected his capacity for light work. (R. 256).

7. Under the Secretary's regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

8. The Secretary's regulations define light work as follows:

> Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even thought the weight lifted may be very little, a job is in this category when it

requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

9. The Secretary has promulgated a Listing of Impairments considered severe enough to prevent a person from performing any work. Should a plaintiff's condition meet or equal a listed impairment, he or she will be found disabled without consideration of his or her age, education, or vocational background. 20 C.F.R. § 404.1525; see also n. 7, supra at 804.

In response, Dr. Abramson submitted another written analysis, in which he reviewed plaintiff's medical file, essentially reiterated his hearing testimony regarding plaintiff's heart condition, and noted that the pulmonary test was "within normal limits." (R. 254). Accordingly, Dr. Abramson concluded that plaintiff was capable of performing light work. (R. 255).

## B. *ALJ's Decision*

After considering all the evidence of record, the ALJ determined that plaintiff suffered from a severe 20 to 30 percent stenosis of the right coronary artery, atypical chest pain, and fatigability. (R. 21). These impairments, the ALJ found, prevented plaintiff from performing his past work as a tool and die worker, which is considered heavy work. (R. 20–21). The ALJ further found, however, that plaintiff retained the capacity to perform a full range of light work. (R. 20–21). In this regard, the ALJ relied on the "meticulous analysis" and opinion of the medical expert. (R. 20). Considering this capacity for light work along with plaintiff's age, education, and work experience, the ALJ consulted Rule 202.14 of the Medical–Vocational Guidelines ("Grid"), and concluded that plaintiff had the capacity to perform jobs that existed in significant numbers in the national economy. (R. 21–22). Accordingly, the ALJ determined that plaintiff was not disabled under the Act. (R. 22).[10] This stands as the Secretary's decision and is presently before this court for review. 42 U.S.C. § 405(g).

## II. *ANALYSIS*

The applicable standard of review of the Secretary's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g); 1382(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Kapusta v. Sullivan,* 900 F.2d 94, 96 (7th Cir.1989), *quoting, Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is not the court's task to reweigh the evidence, *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989), or reconsider the ALJ's credibility determination. *Kapusta,* 900 F.2d at 96, *citing, Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.) *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986). In this case, plaintiff finds fault with two of the premises upon which the ALJ bases his decision. First, the plaintiff argues that he does not have a high school education, and that the ALJ's finding to the contrary is a faulty premise upon which he based his conclusion. Second, the plaintiff contends that the ALJ's finding that the plaintiff is capable of performing light work is not supported by substantial evidence. We consider these two contentions in light of the record before us.

■ With regard to plaintiff's first contention, we agree with plaintiff as to the probable inaccuracy of the ALJ's conclusion that the plaintiff has a high school education. Plaintiff testified that he completed just ten grades. The telephonic contact with plaintiff is the only evidence of record to the contrary and it may have been a misunderstanding. According to the Grid, however, the level of plaintiff's education—whether high school or anything less than high school—is of no consequence when his age and capacity for light

---

**10.** When considering whether a plaintiff is eligible for benefits, the Secretary uses a five-step inquiry: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment or combination of impairments severe; (3) does the impairment meet or exceed any of the list of specific impairments that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; (4) if the impairment has not been listed by the Secretary as conclusively disabling, is the plaintiff unable to perform his or her former occupation; and (5) if the plaintiff cannot perform the past occupation, is the plaintiff unable to perform other work in the national economy in light of his or her age, education and work experience. A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability. 20 C.F.R. § 404.1520 (1991); *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987); *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 389 (7th Cir.1992). The plaintiff bears the burden of proof of steps one through four; if that burden is met, the burden shifts to the Secretary to prove the plaintiff remains capable of performing other work in the economy. *Ray v. Bowen,* 843 F.2d 998, 1001 (7th Cir.1988), *cited in Young,* 957 F.2d at 389.

work are factored into the analysis. For example, based on plaintiff's age of 53 and capacity for light work, and assuming he has a limited education of just ten grades, 20 C.F.R. § 1564(b)(3), and no transferable skills from his prior work experience, the Grid would still direct a finding of "not dis-- abled" under Rules 202.10 or 202.11. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.10; 202.11. Thus, if it could be said that the ALJ erred in his finding as to plaintiff's education, such error was harmless and did not affect the outcome of his decision. *Tom v. Heckler*, 779 F.2d 1250, 1256 n. 9 (7th Cir.1985) (relevancy of a particular vocational factor controls determination of whether error is harmless).

■ Plaintiff's second contention, that the ALJ's determination that plaintiff is capable of performing light work is not supported by substantial evidence, is far more significant. In arguing against the ALJ's finding, plaintiff relies to a great degree on his own assessments of his capabilities; he notes that he:

> testified that he is unable to walk very far. He stated that he can walk 5 blocks, stopping twice to·rest. He says that such exertion makes him short of breath. ·If he stands more than 5 minutes, he gets weak. His doctor reported that [plaintiff] experienced dyspnea on exertion and that he is dyspneic with 4 blocks of walking. A medical advisor retained by Social Security testified that [plaintiff] (1) has dyspnea with physical exertion; (2) gets shortness of breath after walking several blocks; and (3) can only stand for a few minutes.

(Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 5 (citations omitted).) These assessments, whether they are taken from plaintiff's hearing testimony, his reports to a physician, or a summary of his testimony, are plaintiff's own, subjective evaluations of his condition. Such subjective complaints must be supported by the objective medical evidence of record. *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.1994).

Here, the ALJ was able to consider the opinion of a medical expert in order to determine that plaintiff's assessment of his capacities was not consistent with the medical evidence. The medical expert noted that plaintiff's stenosis had been reduced.to just 20–30% and that his description of his chest pain was atypical for such a condition. The medical expert also, ultimately, found plaintiff's complaints of shortness of breath and emphysema unsupported by a pulmonary function study that was within normal limits.

The ALJ also noted that plaintiff's own descriptions of his daily activities were, at times, equivocal. (R. 20). For example, at one point in his hearing, plaintiff stated he did no chores around his apartment other than grocery shopping. (R. 41). At another point, plaintiff indicated that he cooks breakfast and does some laundry. (R. 45). At yet another time, during his consultative psychiatric evaluation, plaintiff stated that he does cleaning, cooking, laundry, grocery shopping, and regularly attends church. (R. 188). The ALJ considered these discrepancies and combined them with the lack of objective medical evidence to substantiate the degree of plaintiff's complaints and found the plaintiff's subjective assessment of his capacity for work not credible. (R. 20–21). An ALJ's credibility determination will not be disturbed unless it is patently wrong. *Luna*, 22 F.3d at 690. We do not find that to be the case here.

Rather than accept the plaintiff's evaluation of his own capacity for work, the ALJ relied, in large part, on the medical expert's opinion. Dr. Abramson reviewed plaintiff's medical file on two occasions and considered plaintiff's testimony in concluding plaintiff was capable of light work.[11] Such a conclusion constitutes substantial evidence upon which the ALJ is entitled to rely. *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir.1993). Beyond that, plaintiff's own treating physician, Dr. Vollala, stated that plaintiff's impairments do not affect his abilities to walk, stand, or sit (R. 238), and that plaintiff could lift a maximum of 20 pounds, or 15 pounds, for ⅓ of a day. (R. 237). While Dr. Vollala

---

11. We reject plaintiff's argument that, in referring to "light work," Dr. Abramson was not employing that term as it is used in the Social Security Regulations. (*See* Plaintiff's Reply at 2).

The record demonstrates that Dr. Abramson is well-versed in the terminology the Secretary employs in disability determinations. (R. 62–64; 66–70; 249–250).

indicated that plaintiff complained of fatigue and shortness of breath, he also recognized that these were subjective findings as opposed to medical findings. (R. 237–239). Such findings are not entirely inconsistent with a capacity for light work, which requires the capacity to lift or carry ten pounds frequently and, if only a small amount of lifting is required, do a good deal of walking or standing. 20 C.F.R. § 404.1567(b). Dr. Vollala's assessment simply does not undermine Dr. Abramson's opinion to the degree where the ALJ would have been required to reject it. In short, the ALJ's conclusion that the plaintiff is capable of performing a full range of light work and that, based on the Grid, he is not disabled under the Act is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED, and the plaintiff's motion for summary judgment is DENIED.