Kenneth ALVES, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 97 C 4833.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 17, 1998.

Alan L. Farkas, Blath, Hannesfahr & Eaton, Chicago, IL, for Plaintiff.

James M. Kuhn, Asst. U.S. Atty., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

The Plaintiff, Kenneth Alves, seeks judicial review pursuant to the Social Security Act, 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security ("Commissioner") denying him Supplemental Security Income [1] ("SSI") benefits for a portion of the period during which he claims he was disabled. Plaintiff moves this Court for

summary judgment reversing the Commissioner's decision denying his claim for such benefits during the period in question. The Commissioner has filed a Cross–Motion for Summary Judgment in his favor. For the reasons set forth below, Plaintiff's Motion is denied and the Commissioner's Motion is granted.

### Procedural History

On October 4, 1988, Plaintiff filed his initial application for SSI, alleging that he had been disabled since March 1988, based solely on a broken ankle. (R. at 68.) [2] On November 16, 1988, that application was denied. (R. at 73.) On December 30, 1988, Plaintiff filed a request for reconsideration of the denial, (R. at 76), and, on February 9, 1989, the claim was again denied. (R. at 78 .) On April 12, 1989, Plaintiff filed a Request for Hearing by an Administrative Law Judge, (R. at 81), pursuant to which, a hearing was held before an Administrative Law Judge ("ALJ") on July 25, 1989. (R. at 143.) On February 26, 1990, the ALJ issued his decision denying the Application on the basis that, while Plaintiff had sustained a fracture of his right ankle, he had not been unable to work as a result thereof for twelve continuous months after the fracture, as required by the Regulations. (R. at 140–145.) On April 11, 1990, Plaintiff filed a Request for Review of the ALJ's decision with the Commissioner's Appeals Council, (R. at 146), and, on March 13, 1991, the Request for Review was denied. (R. at 147.)

On April 15, 1994, Plaintiff filed the instant Application for SSI, alleging that he had been disabled since December 15, 1992 because of alcohol and drug abuse, varicose veins, pins in his ankles, high blood pressure, tuberculosis, cirrhosis of the liver, numbness on both sides of his body, and severe memory loss. (R. at 18.) After the Application was denied initially and again upon reconsideration, Plaintiff requested a hearing, which was held before ALJ Rodney G. Haworth on February 6, 1996. On February 16, 1996,

---

1. Supplemental Security Income provides a minimum level of income to persons who are age 65 or over, blind, or disabled, and who do not have sufficient income and resources of their own. 20 C.F.R. §§ 416.110, 416.202 (1994).

2. All references are to the certified record prepared by the Commissioner and filed with the Court pursuant to 42 U.S.C. § 405(g).

the ALJ issued his decision, finding that Plaintiff was disabled, but only since January 17, 1995, since he had engaged in "substantial gainful employment" until that date. (R. at 18–24.) On March 21, 1996, Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council, (R. at 6–10), and, on March 28, 1997, the Appeals Council denied the Request for Review, which stands as the final decision of the Commissioner, (R. at 4–5), and which is the subject of the Cross–Motions now before this Court.

### Summary of Relevant Testimony

At the hearing before the ALJ, Plaintiff testified that he had tuberculosis, a liver condition, varicose veins, problems with his right ankle, and memory problems. (R. at 42–44.) He testified further, however, that his primary problem was abuse of alcohol and cocaine. (R. at 49–50.) When questioned by the ALJ, Plaintiff testified—clearly in the present tense—that he drank as much wine, beer, whiskey, gin and rum as he could get on a daily basis. His testimony was similar with respect to his seemingly then-current use of cocaine. (R. at 45–50.) Later, however, after the ALJ noted a document that indicated that Plaintiff had been participating in an alcoholic and drug treatment program in 1994, (R. at 280–285), he testified that he was supposed to go to the program every day, or as often as possible. (R. at 50–51.) Then, when queried by his attorney as to when he had last drank alcohol or used cocaine, Plaintiff—after first testifying that he could not recall—testified that he thought it had been over a year. He then testified, upon further query, that his earlier testimony concerning his use of alcohol and cocaine related to his past usage. (R. at 56–57.)

In connection with his use of alcohol and cocaine, Plaintiff testified—again seemingly in the present tense—that he drank from one to three pints of wine, whiskey, gin or rum

and/or beer per day. In addition, he would consume from five to twenty bags of cocaine—normally about three bags—in an average day. When queried as to how much he would spend on cocaine in an average day, Plaintiff testified that he would spend about $100.00 per day. (R. at 45–48.)

Plaintiff, who had not worked since December 1992, testified that he had been receiving $687.00 per month in disability benefits from the Veterans Administration only since September 1995 and that, prior to that, he had subsisted on $154.00 per month in benefits and $112.00 per month in food stamps, which was his only income. (R. at 36–37.) Plaintiff testified further that, in order to purchase his daily supply of alcohol and cocaine, his girlfriend—who worked as a home care nurse—would give him from $40,00 to $50.00 about four times per week. (R. at 48–49.)

### The ALJ's Decision

In his February 16, 1996 decision, the ALJ—apparently crediting Plaintiff's testimony that he had not consumed drugs or alcohol for about one year prior to the hearing—found that it was reasonable to find him disabled as of January 17, 1995 [3], but not prior thereto. (R. at 19–20.) Plaintiff contends that he should have been found disabled and paid back benefits at least as of April 15, 1994, the date of his Application herein.[4] Plaintiff's "Amended Complaint", dated August 21, 1997. The ALJ's reason for not awarding Plaintiff benefits prior to January 17, 1995 was based on his testimony which, according to the ALJ, indicated that he spent approximately $3,597.00 per month on alcohol, cocaine and tobacco, although his reported legitimate income was only about $800.00 per month. The ALJ surmised then, that the Plaintiff must have obtained more than $2,300.00 per month through engaging in illegal activity in order to support his habits, which activity constituted substantial

---

**3.** Plaintiff was admitted to the Department of Veterans Affairs' alcohol and drug treatment facility on January 17, 1995 and was discharged therefrom on February 7, 1995. (R. at 238–240.)

**4.** Because of Plaintiff's receipt of $687.00 per month in VA benefits beginning in September 1995, he was not eligible for SSI benefits thereaf-

ter. Therefore, the effect of the finding of disability was that Plaintiff was issued a lump-sum check of $2,969.62 for back benefits from January 1995 through July 1995. By the instant appeal, he seeks additional lump-sum back benefits for the period from April 1994 to December 1994.

gainful employment. Thus, the ALJ concluded, Plaintiff's ability to engage in such activities prior to January 17, 1995 indicated that he was not disabled prior to that date.

## STANDARD OF REVIEW

In reviewing the Commissioner's (here the ALJ's) decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). Rather, the court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g) (1988), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron* 19 F.3d at 333 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

## Discussion

The ALJ having found that Plaintiff became entitled to SSI benefits as of January 17, 1995, the only issue before the Court in this appeal is whether the ALJ's finding that Plaintiff was engaging in "substantial gainful activity" and was not, therefore, disabled prior to that time, is supported by substantial evidence.

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (1994). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.; see also Young v. Secretary of Health and Human Services,* 957 F.2d 386, 389 (7th Cir.1992). A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4, after which the burden shifts to the Commissioner at step 5. *Id.*

With respect to the period between April 15, 1994—the date on which Plaintiff filed his Application—and January 16, 1995, (hereinafter the "relevant time period") the ALJ terminated his analysis at Step 1 of the sequential evaluation when he found that Plaintiff had engaged in substantial gainful activities (worked) during that period. The regulations provide that an individual who is engaging in substantial gainful activities cannot be found disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b).

The Commissioner's definition of what constitutes substantial gainful activity is set forth in 20 C.F.R. § 416.972, where it is defined as work that involves significant physical or mental activities and that is typically done for pay or profit, whether or not a profit is actually realized. 20 C.F.R. § 416.972(a) and (b). The fact that activities from which pay or profit is realized may be illegal is no bar to a finding that such activities constitute substantial gainful activity. *Dotson v. Shalala,* 1 F.3d 571, 575–577 (7th Cir.1993).

As a means of determining whether an individual is engaging in substantial gainful activity—regardless of whether such activity is legal or illegal—the Commissioner has established a threshold earnings level beyond which substantial gainful activity is presumed. Thus, for years after 1989, earnings in excess of $500.00 per month creates a rebuttable presumption that one is engaging in substantial gainful activity. 20 C.F.R. § 416.974(b)(vii); *Jones v. Shalala,* 21 F.3d 191, 192 (7th Cir.1994). Therefore, Plaintiff having admitted to receiving (and spending) income far in excess of $500.00 per month during the relevant time period, the burden was upon him to rebut the presumption that he was engaged in substantial gainful activity by providing evidence that he was not earning the amount he was paid or that he could not adequately perform the jobs for which he was paid for lengthy periods of time or without special assistance. *Jones,* 21 F.3d at 193.

Although Plaintiff now has several physical impairments, he testified that his primary problem during the relevant time period was with the use of drugs and alcohol. When queried by the ALJ as to the extent of his drug and alcohol consumption, Plaintiff indicated that it was essentially an all day, every day habit when he was able to get it. In an apparent attempt to reconcile Plaintiff's testimony that he had not worked for several years and that he had subsisted only on public aid benefits of $154.00 per month and $112.00 per month in food stamps with his testimony indicating that his expenditures for drugs and alcohol totaled more than $3,000.00 per month, the ALJ queried Plaintiff concerning the sources of his income. Plaintiff's testimony in this regard was clear and unequivocal. His only other source of income was the approximately $640.00 to $800.00 per month that he received from his girlfriend. Plaintiff testified that he did not know how much money his girlfriend made working as a home care nurse, but it is clear from his testimony that she was extremely generous to him in this regard. While the ALJ appears to have initially had some reservations concerning Plaintiff's testimony—both as to the amounts and monetary costs of his daily consumption of alcohol and cocaine and the sources from which he was able to finance their purchase—Plaintiff's testimony in this regard did not falter and is unrefuted.

Plaintiff, now asserting that neither his testimony concerning the quantity of drugs and alcohol he consumed and the approximate monetary value thereof nor the exact amount of income he received from his girlfriend is clear from the record, faults the ALJ for not having more fully developed the record in this regard, presumably by asking more probing questions of him.[5] Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem.Supp.")

at 5–6. Plaintiff asserts, for example, that in describing his use of cocaine to the ALJ, he indicated that he used it sporadically, depending primarily on how much money he had available to him, and that on the days he did use cocaine, the use varied widely. Pl.'s Mem.Supp. at 5. Contrary to Plaintiff's assertions, however, there is no indication that his use of alcohol and drugs were sporadic. He testified that he drank on a daily basis—although the type and quantity of alcohol varied, depending on his finances—and that he used as much cocaine as he could get.[6] He testified further that he would consume from five to twenty bags of cocaine per day, with an average of three bags per day. Only the size of the bags—which price ranged from $5.00 to $25.00 per bag—varied according to how much money Plaintiff had. (R. at 46–47.) Not being satisfied with Plaintiff's inability or unwillingness to be more specific about the quantities and approximate costs of his cocaine habit, the ALJ asked Plaintiff to estimate the amount of money he spent on cocaine on an average day, to which he replied that he spent an average of $100.00 per day.[7] (R. at 47.)

With regard to how he was able to finance his expensive alcohol and cocaine habits, Plaintiff's testimony was clear and straightforward, although the veracity of the testimony might be questioned. Thus, if Plaintiff's unrefuted testimony is to be believed—which the ALJ permissibly chose to do—his girlfriend worked as a home care nurse while he drank alcohol and consumed drugs all day. She then subsidized his habits to the tune of between $640.00 and $800.00 per month from her presumably hard-earned pay. The ALJ did ask Plaintiff how much money his girlfriend made from her employment in order to afford to give him such a large sum, but Plaintiff was either unable or unwilling to

---

**5.** It is noted that Plaintiff was represented by counsel at the hearing before the ALJ. Counsel was allowed to question Plaintiff and could have delved further into these issues had he felt that Plaintiff's answers would have been helpful to his case.

**6.** Plaintiff's testimony in this regard is consistent with other statements made by him, one of which was as recent as October 19, 1994, a few months

prior to the filing of the instant Application. (R. at 168, 181, 202.)

**7.** Considering Plaintiff's testimony that he would consume up to twenty bags of cocaine per day, and that the bags sold for a *minimum* of $5.00 each, his estimation of spending an average of $100.00 per day is not as far-fetched as it might first appear. Indeed, even four of the largest bags would cost $100.00.

answer that question. Plaintiff now appears to argue that his testimony in this regard, and his testimony that his girlfriend was his only other source of income, was so incredible that the ALJ should not have credited it but that, instead, the ALJ was obligated to develop the record further, although he does not suggest how this could have been done. Pl.'s Mem.Supp. at 6. Had Plaintiff indicated that he had other sources of income, further inquiry would have been warranted.

The Court agrees that the ALJ had an obligation to develop a full and fair record on which to render his decision, even though Plaintiff was represented by counsel. However, that obligation did not require that the ALJ extricate Plaintiff from the adverse consequences of his own—perhaps seemingly unlikely or incredible—testimony. Perhaps Plaintiff would have preferred that the ALJ—prior to questioning him about his drug use expenses and sources of income— had informed him that his answers could result in a finding that he was engaging in substantial gainful activities, thereby decreasing his back benefits payments. However, the ALJ, in his role as an impartial factfinder, was not obligated to do so.

Plaintiff relies heavily on *Curtis v. Sullivan,* 764 F.Supp. 119 (N.D.Ill.1991), in which the district court rejected an ALJ's assumption that a claimant had engaged in substantial gainful activity because he had an expensive drug habit. Pl.'s Mem.Supp. at 7. That case, however, is factually distinguishable from the case at bar. In *Curtis,* the claimant's treatment notes showed that the claimant performed odd jobs, but neither the type of employment, the duration of employment, nor the compensation he received for performing the jobs were shown. The ALJ found the claimant's testimony—which indicated that the work was irregular and that the compensation he received for performing the work was less than that required for a finding of substantial gainful activity—to be incredible and did not take it into consideration. The claimant testified further, however, that he paid for his drugs with income from food stamps and public aid and by engaging in various other activities, including selling syringes on the street and writing bad checks. He also testified that he took money from his girlfriend. From this testimony, the ALJ—having discredited the claimant's testimony regarding his sources of income— concluded that he must have been engaged in substantial gainful activity, since he could not give a satisfactory answer to explain where he obtained the money to support his drug habit. *Curtis* at 120.[8]

Here, unlike in *Curtis,* the ALJ fully credited Plaintiff's unrefuted testimony regarding his only sources of income—the public aid benefits and the contributions from his girlfriend—which added up to less than one-fourth of the amount that he spent for drugs. Based on this significant discrepancy between Plaintiff's stated expenditures and his stated income, the ALJ concluded that the difference must have been attributable to illegal activities.[9] Since the ALJ attempted to extract further information from Plaintiff regarding his sources of income, and based on Plaintiff's definitive testimony that he had no other source of income, the Court finds that the ALJ's extrapolative deduction that Plaintiff was engaging in substantial gainful activities during the relevant time period is reasonable and is, therefore, supported by substantial evidence.[10]

### Conclusion

Based solely on Plaintiff's unrefuted testimony—which the ALJ permissibly chose to

---

**8.** The Court notes that *Curtis* was decided almost two years prior to the Seventh Circuit's decision in *Dotson,* which held that illegal activities could constitute substantial gainful activities.

**9.** In the body of his decision, the ALJ surmised that the activities in which Plaintiff engaged to support his habit were illegal activities. (R. at 19.) In his "findings", however, he noted that such activities, whether legal or otherwise, were substantial. (R. at 20.) Since *Dotson,* such distinctions are unnecessary.

**10.** Plaintiff's contention that, in view of the lack of "direct evidence" to support his conclusion,

the ALJ erred in surmising—using his deductive reasoning—that he was engaging in substantial gainful activity, is rejected. Pl.'s Mem.Supp. at 7. To accept Plaintiff's argument would result in encouraging claimants to intentionally provide vague and evasive testimony—or to even outright lie—secure in the knowledge that there would be no way in which evidence to the contrary could be obtained. In this regard, perhaps Plaintiff, in hindsight, wishes that he had minimized the estimated daily cost of his drug habit, and/or that he had given a higher estimate of his girlfriend's contributions thereto. He could then have argued that, although he received "income" in

credit—indicating that his monthly expenditures for alcohol and drugs far exceeded his stated income between April 15, 1994 and January 16, 1995, the ALJ deduced that Plaintiff had other income which exceeded $500.00 per month during that period, and surmised that such income was derived from his engaging in substantial gainful activity. Having given testimony indicating a substantial discrepancy between his monthly expenses and his stated monthly income, the burden was upon Plaintiff to rebut the presumption that the difference was attributable to substantial gainful activity. Plaintiff failed to carry—or to even attempt to carry—his burden in this regard. Accordingly, the ALJ's finding that Plaintiff engaged in substantial gainful activity and that, therefore, he was not disabled during the period in question, is supported by substantial evidence. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the Commissioner's Motion for Summary Judgment be, and the same hereby is, granted.

excess of the $500.00 per-month threshold, he had rebutted the presumption that he was engaging in substantial, gainful activity because he was not "earning" it. Such a result would be absurd.