Ted LIMBEROPOULOS,
Plaintiff–Appellant,

v.

Donna SHALALA, Secretary of the Department of Health and Human Services, Defendant–Appellee.

No. 93–2034.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1993.

Decided Feb. 23, 1994.

Jeffrey A. Rabin, Karen L. Sherman (argued), Chicago, IL, for plaintiff-appellant.

Sharon J. Coleman, Asst. U.S. Atty., Crim. Div., Kelly Rausch Larson (argued), Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Daniel E. May, Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and CRABB, Chief District Judge.[*]

* The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

CUMMINGS, Circuit Judge.

Plaintiff sought judicial review of a decision of the Secretary of Health and Human Services, which found that plaintiff was not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act. 42 U.S.C. §§ 416(i), 423. The district court affirmed her decision, causing plaintiff to appeal.

*Administrative Proceedings*

On May 11, 1990, plaintiff applied for DIB, claiming that he became disabled on April 10, 1990, because of varicose veins. A.R. 52–54, 61.[1] His claim was denied by a Regional Commissioner on June 20, 1990, on the ground that the varicose vein condition was not so severe as to interfere with his former job as an owner-operator of a fruit stand. A.R. 56–58. Reconsideration was denied on the ground that denial of plaintiff's claim was proper. A.R. 61–63. This resulted in plaintiff's request for a hearing by an Administrative Law Judge ("ALJ") (A.R. 64). That hearing took place on November 20, 1991, and consisted of testimony of plaintiff and his daughter (A.R. 26–51). On December 23, 1991, the ALJ denied plaintiff DIB, finding that plaintiff could perform his past work and therefore that he was not disabled. The case was thus decided at Step Four of the inquiry required by the Social Security regulations. *Campbell v. Shalala,* 988 F.2d 741, 743 (7th Cir.1993). The ALJ's critical findings may be summarized as follows (cf. A.R. 14–16):

Plaintiff did not perform substantial gainful activities since April 1990. When he visited the Mayo Clinic in May 1983 he was working as a baker and had to stand on his feet during most of the work day. He was told to wear elastic stockings and to have elective repair of the varicose veins in the next 6 months. In March 1984, when he revisited the Mayo Clinic, that institution found his symptoms were stable since his last examination. In October 1987 he was hospitalized and had a venogram, was treated with anticoagulant, and his condition stabilized and improved.

In April and November 1990, plaintiff saw Dr. Alshabkhoun, a specialist, who reported that plaintiff's lower extremity pulses were adequate and that he had no history of edema.

In November 1990, plaintiff was evaluated by Dr. Revethis, an internist, at the request of the Social Security Administration. Although plaintiff complained of severe pain and numbness in both lower legs, he denied any swelling and was not receiving any medication and had no serious sensory loss.

In October 1991, Dr. Levine, an osteopathic physician, examined plaintiff and found that he was under no acute distress and gave negative findings indicating that plaintiff's varicose veins were stabilized. But a month later Dr. Levine, based on plaintiff's subjective complaints and description of his condition, informed plaintiff's attorney that plaintiff had to stop walking after one block and could not stand more than one hour.

After reviewing all the evidence, including a Vocational Assessment and two Residual Physical Functional Capacity Assessments ("RFC"s), the ALJ concluded that plaintiff had the capacity to "occasionally" lift 50 pounds, frequently lift 25 pounds, and stand or walk (with normal breaks) six hours in an eight-hour work day. The ALJ also noted that the medical reports do not meet or equal the requirements of the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4.[2]

After describing plaintiff's subjective complaints and the reports of his examining physicians and consulting physician, the ALJ determined that a limited resting requirement would not interfere with plaintiff's work, that his subjective complaints were not fully credible, and that he maintained the residual functional capacity to perform at least a full range of medium work.

In concluding his report, the ALJ made ten findings (A.R. 17). Finding 6 was that plaintiff's subjective complaints were not

---

1. A.R. herein refers to the administrative record and J.R. refers to the record in the district court.

2. The Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 (20 C.F.R. 382–431) does not include varicose veins of the leg.

credible to the extent alleged, nor were they significantly disabling.. Finding 8 was that he could work in his past occupation because he had the residual functional capacity to perform a full range of medium work activity.[3]

After the adverse decision of the ALJ, plaintiff appealed to the Social Security Administration's Appeals Council, which refused to change the ALJ's decision because he "considered all of the evidence in the record, including the testimony of your daughter, and the record supports his conclusion that despite the limitations arising from your impairment, you retain the ability to perform your past work at the medium exertional level as the owner and operator of a produce market" (A.R. 3). The Appeals Council advised plaintiff that the ALJ's decision stood as the final decision of the Secretary. This ruling prompted plaintiff to file a district court complaint seeking review of the Secretary's adverse decision.

*Judicial Proceeding*

On October 30, 1992, plaintiff filed a complaint (J.R. 1) showing that he had been denied DIB and urging that the decision of the Secretary be reversed because the ALJ's finding that he was not disabled was not based upon substantial evidence and was arbitrary and capricious. This caused the Secretary to file an answer (J.R. 7) in January 1993 asserting that the findings of the Secretary were supported by substantial evidence and were conclusive and praying for judgment affirming the adverse decision. Subsequently plaintiff filed a motion for summary judgment (J.R. 9), which was denied by the district court on February 25, 1993 (J.R. 19), and judgment was entered in favor of the Secretary at the same time (J.R. 18).

On the same date Judge Conlon filed an opinion affirming the Secretary's final deci-

sion (J.R. 17). She pointed out that since the Appeals Council denied review of the ALJ's decision, it became the Secretary's final decision. She refused to consider whether the ALJ properly graded plaintiff's past occupation as "medium" instead of heavy work because she thought he had failed to raise the matter before the ALJ or in the petition to the Appeals Council[4] and therefore could not challenge the ALJ's finding that plaintiff could perform work at the medium exertional level. The district judge observed that the ALJ's credibility determination with respect to plaintiff's testimony about subjective complaints was entitled to considerable deference, citing *Steward v. Bowen,* 858 F.2d 1295, 1302 (7th Cir.1988). The court observed that the ALJ also found plaintiff's daughter's testimony unpersuasive and found that the ALJ sufficiently articulated his disbelief of plaintiff's subjective complaints of pain. While plaintiff argued that the record did not support the ALJ's finding that plaintiff could occasionally lift 50 pounds, the two RFC reports considered by the ALJ stated that he could still occasionally do so and could frequently lift 25 pounds.[5]

The district court concluded as follows:

A reasonable mind could accept the evidence as presented as adequate to support the conclusion that Limberopoulos' physical ailment neither constitutes a statutorily recognized impairment nor prevents him from performing his past occupation as the owner and operator of a produce market.

We note that while the Vocational Assessment (A.R. 83) supports this conclusion, it is based on a citation to an outdated classification of plaintiff's work as medium rather than heavy (Attachment A to Secretary's Brief). We therefore reverse the district court's grant of summary judgment in favor of the Secretary and instruct the district court to

---

3. The work findings were based on a Vocational Assessment and two Residual Functional Capacity Assessments which were exhibits considered by the ALJ. They appear at A.R. 83, 102–108 and 112–119. The Vocational Assessment relied on a 1977 antiquated description of the type of work performed by plaintiff as medium work activity rather than heavy (Exhibit A to the Secretary's Brief in this Court).

4. The petition to the Appeals Council argued that the ALJ's conclusion that the plaintiff could perform his past relevant medium level work was "without support in the record" and attacked the ALJ's finding that plaintiff could perform medium level work (A.R. 9, 10). It also alleged that plaintiff's "past relevant work [was] all heavy or medium" (A.R. 9).

5. See A.R. 103, 113.

remand the case to the ALJ for further proceedings in conformity with the current classification of plaintiff's work.

*Discussion*

Plaintiff alleges several flaws in the decisions below. First, he complains that the only medical evidence of his capabilities was in his favor and came from Dr. Levine, a consulting osteopath. Dr. Levine's letter of October 19, 1991, to plaintiff's lawyer pointed out that plaintiff had "extensive varicosities of the lower extremities" but did not discuss his capabilities (A.R. 133–136). A month later Dr. Levine added that plaintiff was in no acute distress and repeated that there were extensive varicosities of both lower extremities. Summarizing plaintiff's statements to him, Dr. Levine concluded that plaintiff was unable to lift more than 20 pounds at one time, was unable to stand more than 10–15 minutes without pain, and was unable to perform standing work for more than one hour and then required a 20–30 minute rest (A.R. 137–140).

In November 1990 Dr. Revethis reported that plaintiff was on no medication and entered the office with a normal gait and without the assistance of a walking device. He added that plaintiff complained that he could not stand for any period of time or walk any distance but that his symptoms were relieved with rest and leg elevation (A.R. 110–111).

■ Plaintiff complains that the record does not support the Secretary's finding that plaintiff could do medium work, which is defined as lifting no more than 50 pounds at a time and frequently lifting up to 25 pounds.[6] The Secretary's finding was supported, however, by a Vocational Assessment of plaintiff stating that he could perform a full range of medium work activity, which was once considered to be the degree of activity required to perform his occupation as a fruitstand owner-operator as that job is generally performed in the economy (A.R. 83); as noted above, however, newer information suggests that plaintiff's former occupation actually required him to perform heavy work. Similarly, two RFC assessments concluded that he could occasionally

lift 50 pounds, frequently lift 25 pounds, stand six hours in an 8–hour work day, sit six hours in an 8–hour work day, and that his capacity to push and pull was unlimited. A.R. 102–109, 112–119. Plaintiff's first argument thus fails, since there is evidence in the record to support the ALJ's findings that plaintiff could perform medium work.

■ Plaintiff next criticizes the district court's opinion for finding that substantial evidence in the file supported the ALJ's conclusion that plaintiff could return to his prior work. This finding was supported by the flawed June 4, 1990, Vocational Assessment and by the two 1990 RFC assessments. While plaintiff claims that the ALJ had not referred to these exhibits, that is incorrect. The two RFC assessments were referenced by the ALJ at A.R. 15 and 17 and the Vocational Assessment at A.R. 16 and 17. Plaintiff assails one of the RFC reports on the ground that it was prepared by a doctor who is a pediatric allergist, but he does not attack the qualifications of the doctor who prepared the other RFC.

Plaintiff criticizes the ALJ for finding that the October 19, 1991, "examination by Dr. Levine showed many negative findings to indicate that the claimant's varicose veins were stabilized" (A.R. 15). But Dr. Levine observed that plaintiff was in no acute distress, was able to get up on the examining table without assistance, had only "some calf tenderness" and that there was no definite evidence of acute "deep venous thrombosis" (A.R. 133, 135, 136). Similarly, Dr. Frigas reported in March 1984 that plaintiff's varicose vein symptoms "are really mild at present," so that he should postpone any surgery and start using elastic stockings. A.R. 94.

The ALJ also concluded that plaintiff's testimony was "not fully credible" (A.R. 16) because he did not appear to be under severe pain or have marked numbness of the legs and his subjective complaints were inconsistent and negated his assertions of intensity and were contradicted by examining physicians. The ALJ also noted that in plaintiff's disability report he acknowledged that he was able to get out and about, drive an

---

6. This definition of medium work appears in 20 C.F.R. § 404.1567(c).

automobile, visit with relatives and attend special occasions such as weddings. The ALJ disregarded plaintiff's daughter's testimony because she did not show that the frequency of his cramps affected his working capacity. Indeed she testified that he was able to work long hours but would lie down and elevate his legs every couple of hours (A.R. 45).[7] Nevertheless, it was permissible for the ALJ to discredit the testimony of those interested witnesses that favored plaintiff. See *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993) (the ALJ's credibility determinations are entitled to great weight).

Finally, plaintiff argues that his previous work was heavy and not medium as found by the ALJ. In support of this he refers to the 1991 Dictionary of Occupational Titles ("DOT"), which describes "heavy work" as exerting 50 to 100 pounds of force occasionally and 25 to 50 pounds of force frequently (Plaintiff's Exhibit G). Plaintiff argues that this description of heavy work is consistent with his own testimony concerning his past work: in his Vocational Report of May 25, 1990, plaintiff stated that he had to lift 100–pound bags of flour and also 30 pounds of eggs from the stockroom to the mixing room. We note, however, that that was when he was in the bakery business and not in his later occupation as a fruitstand owner-operator. The 1977 DOT indicated that plaintiff's latter occupation involved medium work (Attachment A to Secretary's Brief). Plaintiff does not contradict other evidence in the record showing that he exerted 50 pounds of force occasionally and 10 to 25 pounds of force frequently,[8] thus meeting the definition of medium work. Moreover, the June 1990 Vocational Assessment of plaintiff concluded that he could perform a full range of medium work activity as required by his later job as a fruitstand owner-operator.[9] A.R. 83. The Administrative Record thus supports the ALJ's conclusion that plaintiff's past work as

generally performed would be considered "medium."

■ In accord with the subsequent DOT, however, plaintiff now claims that his past work was "heavy." This argument was presented to the Appeals Council, where plaintiff stated that his past work was all heavy or medium (A.R. 9); therefore it was not waived as the district court had concluded. Accordingly, we will consider it in reaching our conclusion.

*Conclusion*

As seen, the ALJ's decision was in accord with an earlier edition of the DOT, which listed the physical demands of the clerk of a self-service store like plaintiff's as having physical demands at the medium exertional level (Attachment A to Secretary's Brief). This 1977 edition of the DOT was used in the Vocational Assessment relied upon by the ALJ (A.R. 16, 17, 83). However, plaintiff has called to our attention the 1991 DOT,[10] which is to the contrary and rates plaintiff's former work as "heavy" instead of medium. In *Pope v. Shalala,* 998 F.2d 473, 482 (1993), this Court determined that new regulations, comparable to the new DOT here, must be considered by a reviewing court. We have previously stressed the importance of the DOT in deciding DIB cases. *Young v. Secretary,* 957 F.2d 386, 392 (1992); *Tom v. Heckler,* 779 F.2d 1250, 1255–1256 (1985); see also *Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984). It now appears that plaintiff performed his past occupation at a heavy exertional level rather than at a medium exertional level, so that the rationale for the ALJ's decision is no longer valid. Because he challenged the ALJ's finding that he could perform work at the medium exertional level before the Appeals Council (A.R. 9), plaintiff sufficiently raised the propriety of grading his past occupation as medium work instead of heavy as in the newer DOT. After the reclassification of plaintiff's work as heavy

---

7. The ALJ did not discuss plaintiff's son's telephoned statement to the Illinois Bureau of Disability Determination Service (A.R. 90) doubtless because it does not even mention plaintiff's ability to continue his past work.

8. A.R. 103, 113.

9. This conclusion appears to have been based on plaintiff's earlier description of the effect of his ailment.

10. The 1991 DOT was also brought to the district court's attention as Exhibits A and B to J.R. 10.

under the 1991 DOT, which under the RFCs means capable of occasionally lifting 100 pounds or more and frequently lifting 50 pounds or more, it seems that plaintiff would be entitled to DIB because the RFCs show that he can only occasionally lift 50 pounds and frequently lift 25 pounds.

Since the current DOT contradicts the ALJ's finding that plaintiff's work was medium, the case must be remanded to the ALJ for reconsideration in light of the applicable DOT.

Judgment reversed with directions to remand to the ALJ.