70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jessie RIGGINS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-2042.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 14, 1995.
Decided Nov. 27, 1995.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff-appellant Jessie Riggins seeks judicial review of the district court's order affirming, pursuant to 42 U.S.C. Secs. 405(g), 1383(c)(3), the determination of the Commissioner of Social Security.[1] The Commissioner denied his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI, respectively, of the Social Security Act, after an Administrative Law Judge (ALJ) determined that he was not disabled within the meaning of the Act. The district court granted summary judgment in favor of the Commissioner. Two issues are raised in this appeal: (1) whether the determinations of the ALJ were supported by substantial evidence; and (2) whether the Appeals Council properly denied Riggins's request for review of the ALJ's ruling. We affirm.
 
 
 2
 * On February 13, 1992, Riggins applied for DIB and SSI. His application was denied by state agency personnel, both initially and on reconsideration. After conducting an administrative hearing on March 5, 1993, ALJ Edward B. Pappert concluded in a written decision that Riggins was not disabled. The Appeals Council denied Riggins's request for review.[2] As the statute permits, Riggins instituted a civil action against the Commissioner in district court, pursuant to 42 U.S.C. Secs. 405(g), 1383(c)(3), seeking judicial review of the final decision of the Commissioner.[3] On February 27, 1995, the district court granted summary judgment in favor of the defendant.
 
 
 3
 At the time of the administrative hearing, Riggins was fifty-two years old and possessed an eighth grade education. He had been employed from 1978 to 1991 as a construction worker, a job that involved heavy lifting. He stated that he had ceased working on November 15, 1991, because of debilitating problems with the gout, an affliction that causes throbbing pain and swelling in his feet, ankles, knees, elbows, and fingers. Riggins testified that he had suffered six or seven attacks of the gout since leaving his job. Riggins also had diabetes mellitus, which causes dizziness. His current activities included babysitting and housework.
 
 
 4
 Medical evidence of Riggins's condition was submitted to the ALJ.[4] Riggins was treated by physicians at the Rush Anchor Clinic in Oak Park beginning on November 8, 1991, when the gout attack that forced him to leave his job occurred. On March 1, Riggins visited the Rush Anchor emergency room complaining of pain in his left knee. On March 6, Dr. Schraufnagle found that Riggins's gout condition had improved and that he could walk without assistance, albeit with a limp. On March 16, rheumatologists Dr. Santos and Dr. Harris assessed Riggins as having polyarticular gout. That same day, Dr. Conroy conducted a "Residual Physical Functional Capacity Assessment" and found that Riggins had no exertional, postural, manipulative, visual, communicative, or environmental limitations.
 
 
 5
 On April 20, 1992, Riggins reported mild pain in his right toe and right elbow. Dr. Santos and Dr. Harris reexamined him and found that Riggins's pain was reduced, though some synovitis (inflammation) persisted in his hands and left ankle. On July 22, Riggins complained of pain in his right great toe, and stated that his feet still swelled intermittently. On August 18, he reported pain in his left ankle. On September 9 and December 11, he complained of blurry vision caused by his recently-diagnosed diabetes. The examining physician suspected that the blurry vision was caused by the patient's poor control of his diabetes. On February 17, 1993, Riggins complained of increased urination, increased thirst, and hand pain due to gout. On February 19, he reported feeling better and that his gout was "not as bad as before."
 
 
 6
 Myer Klein, a vocational expert, also testified at the hearing. In response to the ALJ's hypothetical question, Klein opined that a claimant with Riggins's qualifications and medical conditions could not perform Riggins's past relevant work in construction, but could perform other jobs in the light and medium exertional levels,[5] with the limitation that he could not work at unprotected heights or around dangerous and moving machinery. He stated that there were a significant number of such positions in the local economy. Klein also testified that he believed that a claimant who would miss on average more than one day a month of work would be unable to remain employed for an extended period of time.
 
 
 7
 On October 21, 1993, the ALJ concluded that Riggins was not disabled within the meaning of the Social Security Act. He acknowledged that the medical evidence established that Riggins has severe gout, generally well controlled by medication, and diabetes mellitus, also controllable. However, he also concluded that Riggins's testimony was contradicted by the medical records and therefore was not credible as to the frequency and severity of the gout attacks. The ALJ noted that Riggins had trouble with dizziness, but attributed it to Riggins's poor control of his diabetes. He found no evidence that indicated Riggins suffered acute gout attacks for more than one or two weeks a year. The ALJ found that Riggins retained the residual functional capacity (RFC) to perform a limited range of medium work, and that there were a significant number of jobs in the national economy that he could perform despite his occasional attacks of gout.
 
 II
 
 8
 Riggins raises two general contentions on appeal. First, he argues that the Commissioner's determination that he is not disabled is not supported by substantial evidence. Second, he contends that the Appeals Council erred in denying his request for review.
 
 
 9
 The Social Security Act provides for limited judicial review of final decisions of the Commissioner. See 42 U.S.C. Secs. 405(g), 1383(c)(3). Our standard of review is essentially the same as the district court's: We must affirm the agency's decision if it is supported by substantial evidence, 42 U.S.C. Sec. 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"), in the absence of an error of law, Herr v. Sullivan, 912 F.2d 178, 180 (7th Cir.1990). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Diaz v. Chater, 55 F.3d 300, 305 (7th Cir.1995). Although we review the record as a whole, we may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994). Because the ALJ is in the best position to observe the demeanor of witnesses, we will not disturb the ALJ's credibility determinations so long as they find some support in the record and are not "patently wrong." Id. at 335.
 
 
 10
 To receive SSI or DIB benefits, a claimant must be "disabled." The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Secs. 423(d)(1)(A), 1382c(a)(3)(A); Clark v. Sullivan, 891 F.2d 175, 177 (7th Cir.1989). The claimant's degree of impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. Sec. 423(d)(2)(A), 1382c(a)(3)(B); Clark, 891 F.2d at 177.
 
 
 11
 The applicable Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. See 20 C.F.R. Secs. 416.920(a)-(f). As this court explained in Campbell v. Shalala, 988 F.2d 741, 743 (7th Cir.1993):
 
 
 12
 The [Commissioner] must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir.1992). Once the claimant has satisfied Steps One and Two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir.1984).
 
 
 13
 In this case, the ALJ found Riggins not disabled at Step Five. He determined that Riggins is unemployed and that he has diabetes and gout, but that these ailments do not meet or exceed a listed impairment. He further determined that although Riggins can no longer perform his past work, Riggins is capable of light and medium work with the limitation of avoiding unprotected heights or dangerous and moving machinery. Finally, the ALJ found that there are a significant number of jobs in the national economy, such as a cleaner's position, that Riggins could perform.
 
 
 14
 The question before this court is whether there was substantial evidence for the ALJ's determination that Riggins had the RFC to perform a limited range of medium work. Riggins argues that he has suffered frequent and acute attacks of gout, rendering him incapable of working for more than one day a month and thus preventing him, according to the vocational expert's criteria, from holding a job for an extended period. The Commissioner counters that Riggins's bouts of gout were neither frequent nor acute, and stresses the deference the court should accord to the ALJ's finding that Riggins's subjective testimony was not credible.
 
 
 15
 The ALJ discounted Riggins's testimony concerning the frequency and severity of his gout attacks because it was unsubstantiated by the medical records submitted. He determined that Riggins "exaggerated the frequency with which the acute gout attacks have occurred." On review, this court can not disturb this determination of credibility so long as it has some support in the record and is not patently wrong. Moreover, as with any substantial evidence inquiry, the ALJ's ultimate conclusion of fact must stand even if reasonable minds might differ on the significance of conflicting and inconsistent evidence. See Walker v. Bowen, 834 F.2d 635, 639 (7th Cir.1987). Riggins bears the burden of demonstrating that the ALJ's credibility determination was "patently wrong." Diaz v. Chater, 55 F.3d 300, 308 (7th Cir.1995).
 
 
 16
 The medical records support the ALJ's determination. As the ALJ concluded, the records suggest that Riggins suffered acute gout attacks at most one or two weeks each year, despite his claim that he would exceed one day a month of missed work. Although the medical records document frequent attacks of gout, they do not substantiate that the attacks were generally severe. Instead, the treatment notes demonstrate improvement in control of the gout condition and suggest that he would have been disabled on relatively few days. As such, Riggins has not identified sufficient grounds to disturb the ALJ's credibility determination.
 
 
 17
 Riggins argues that the ALJ relied on isolated favorable findings and ignored Riggins's significant problems at other times. He cites Micus v. Bowen, 979 F.2d 602 (7th Cir.1992). In Micus, the ALJ erred by rejecting the opinion of the claimant's treating physician that she was disabled, despite substantial evidence of the chronic severe and debilitating effects of her lupus. In Micus, unlike this case, the ALJ chose to rely on an isolated statement of unknown foundation by a consulting physician that the claimant's lupus had been in remission. Id. at 607. In so doing, the ALJ disregarded the extensive firsthand knowledge and contradictory conclusions of the claimant's treating physician. In this case, the medical records reflect recurring but, in most cases, relatively mild attacks of gout. There is no disagreement among Riggins's physicians, and no firm opinion by any physician that he is disabled. There is also no evidence that the ALJ did not consider the record as a whole in reaching his determination.
 
 
 18
 The ALJ also considered Riggins's testimony concerning his daily activities. His household activities of cooking, cleaning, mowing the lawn, working in the garden, and babysitting support the conclusion that he is capable of standing and walking for long periods, using his hands for fine and gross manipulation, and lifting weight in accordance with the requirements of medium work. Although it is undisputed that Riggins suffers attacks of the gout, and though these daily activities are probative but not conclusive of Riggins's ability to engage in gainful employment, the ALJ's reliance on them was not improper. See 20 C.F.R. Secs. 404.1529(c)(3), 416.929(c)(3); Reynolds v. Bowen, 844 F.2d 451, 454 (7th Cir.1988). Again, the task on review is not to determine whether Riggins does in fact have debilitating gout, but rather whether substantial evidence supports the ALJ's conclusion that he is not disabled.
 
 
 19
 Aside from the gout, Riggins argues that his diabetes and osteoarthritis would further interfere with his attending work with sufficient regularity. The ALJ determined from the available evidence, however, that Riggins's diabetes had not resulted in significant functional impairment, that there were no signs in the medical evidence of "significant diabetic end organ damage" such that it would meet or equal a listed impairment, and that it was controllable if Riggins followed his dietary and medicinal treatment regimen. Riggins argues that he was unable to follow his regimen because he could not afford to refill his prescription, and thus it was improper for the ALJ to draw an adverse inference.
 
 
 20
 There is substantial evidence in the record for the ALJ's conclusion that Riggins's diabetes was not disabling, regardless of whether it was controlled. He has not identified what specific functional limitations his diabetes would have imposed, other than that he would have had to visit the doctor on six days for treatment and that because of blurry vision he "would likely have had to miss work for several weeks in addition to the time he would have to miss for his gout attacks." It appears that some doctor visits would have occurred anyway due to treatment of his gout. There is no substantiation for his speculative contention that he might have missed several weeks of work. And the ALJ's "failure" to assess the impact of Riggins's osteoarthritis was not error; Riggins has failed to raise the issue before now, including in the district court. He thus appears to have waived the claim. Moreover, his osteoarthritis appears from the record to be mild, and insufficient either by itself or in combination with the gout to establish that he is disabled.
 
 
 21
 Finally, Riggins argues that the Appeals Council erred in denying review of the ALJ's determination. This court's statutory jurisdiction under the terms of 42 U.S.C. Sec. 405(g) is confined to review of the "final decision of the Commissioner." Because the Appeals Council denied review, we may only review the ALJ's final decision, not the Appeals Council's non-final administrative decision to deny review. Damato v. Sullivan, 945 F.2d 982, 988 (7th Cir.1991).
 
 
 22
 Riggins submitted additional evidence of exacerbations of his gout to the Appeals Council in support of his request for review of the ALJ's determination. Riggins contends that the new evidence may be relied upon to challenge the ALJ's finding. The rule in this circuit, however, is that evidence submitted for the first time to the Appeals Council, though technically part of the administrative record, cannot ordinarily be considered by the court in determining the correctness of the ALJ's decision. Eads v. Secretary, 983 F.2d 815, 817-18 (7th Cir.1993).
 
 
 23
 Riggins has forfeited any argument he might have had for consideration of this new evidence, for failure to raise it before the district court. See Ehrhart v. Secretary, 969 F.2d 534, 537 (7th Cir.1992). In any event, as Eads makes clear, the reviewing court can not consider evidence that found its way into the record merely because it was submitted to the Appeals Council in support of a request for review.
 
 III
 
 24
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Effective March 31, 1995, the functions of the Secretary of Health and Human Services in Social Security cases were transferred to the newly-created office of the Commissioner of Social Security. See Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464. Although the Commissioner has been substituted as the defendant, the decision at issue in this case was rendered prior to March 31, 1995, and therefore was the "final decision of the Secretary." Section 405(g) of title 42 has been amended to subject the Commissioner to the same standards of judicial review as were applied to the Secretary. See id. Secs. 107(a), 110(a); 42 U.S.C. Sec. 405(g). For clarity, this order will refer to all actions taken by the Secretary as if they were taken by the Commissioner
 
 
 [2]
 The Appeals Council's denial of review made the ALJ's decision the final decision of the Commissioner. 20 C.F.R. Sec. 404.981; Herron v. Shalala, 19 F.3d 329, 332 (7th Cir.1994)
 
 
 [3]
 Section 405(g) governs judicial review of DIB claims, and section 1383(c)(3) incorporates the provisions of section 405(g) to govern judicial review of SSI claims
 
 
 [4]
 Some additional records were presented for the first time in Riggins's request for review by the Appeals Council and were not available to the ALJ. (See Record at 183-96.) For the reasons discussed below, these records can not be considered on review of the ALJ's decision
 
 
 [5]
 Medium work is defined as lifting no more than 50 pounds at a time and frequently lifting up to 25 pounds. 20 C.F.R. Sec. 404.1567(c); Limberopolous v. Shalala, 17 F.3d 975, 978 (7th Cir.1994). Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. Sec. 404.1567(b). A determination that someone can do medium work finds by implication that he or she can do light or sedentary work. 20 C.F.R. Sec. 404.1567(c). If Riggins were determined capable of only sedentary work, his age, lack of education, and unskilled work experience would render him "disabled" within the meaning of the Act. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.00 & 201.09